IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 4:17-cv-809 |
| v. | ) ) | COMPLAINT |
| KESSINGER HUNTER MANAGEMENT COMPANY, INC., | ) ) ) | |
| Defendant. | ) | Jury Trial Demand. |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 (ADA), 104

Stat 327, as amended, 42 U.S.C. § 12101 *et seq* and Title I of the Civil Rights Act of 1991, 42

U.S.C. § 1981a, to correct unlawful employment practices on the basis of disability and to

provide appropriate relief to Richard E. Shipe. As alleged with more particularity below, the

Equal Employment Opportunity Commission alleges that Kessinger Hunter Management

Company, Inc. failed to provide Shipe with a reasonable accommodation for his disability during

his employment and subsequently discharged him because of his disability, in violation of the

ADA, 42 U.S.C. §§ 12112(a) and 12112(b)(5)(a).

JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and

1345.

1

2. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

3. Venue is proper in this Court pursuant to 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(f)(3)) because the unlawful employment practices were committed within the jurisdiction of the United States District Court for the Western District of Missouri, Western Division.

<u>PARTIES</u>

4. Plaintiff Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action pursuant to 42 U.S.C. § 2000e-5(f)(1) and (3).

5. Defendant Kessinger Hunter Management Company, Inc. ("Kessinger") has continuously been an employer doing business in Kansas City, Missouri, with at least fifteen employees engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), and is a covered entity under Section 102(a) of the ADA, 42 U.S.C. § 122111(2).

<u>ADMINISTRATIVE PROCEDURES</u>

6. On June 28, 2016, more than thirty days prior to the institution of this lawsuit, Richard E. Shipe filed a timely charge of discrimination with the Commission alleging Kessinger violated the ADA.

7. On July 6, 2016 the Commission mailed Kessinger a timely notice of Shipe's charge as required by 42 U.S.C. § 2000e-5(b).

2

8.  After investigation, on August 24, 2017, the Commission issued Kessinger a Letter of Determination finding reasonable cause to believe that Kessinger violated the ADA and inviting it to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

9.  The Commission engaged in communications with Kessinger to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10. The Commission was unable to secure from Kessinger a conciliation agreement acceptable to the Commission.

11. On September 13, 2017, the Commission issued Kessinger a Notice of Failure of Conciliation advising Kessinger that the Commission was unable to secure an acceptable conciliation agreement.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

<u>STATEMENT OF FACTS</u>

13. Shipe is a person who has been diagnosed as having Type-II Diabetes approximately eight years prior to applying for employment with Kessinger.

14. On or about November 20, 2014, Kessinger hired Shipe for the position of Building Maintenance Man at the Kessinger-Crown Center location in Kansas City, Missouri.

15. In early 2015, Shipe informed his Maintenance Supervisor, Larry Cox, and the Director of Human Resources, Susie Hanna, that his diabetes was causing a problem with his foot and affecting his ability to walk.

16. Both Cox and Hanna were aware that Shipe received medical treatment, including for his foot, due to his diabetes.

17. In the Spring 2015, both Cox and Hanna knew of Shipe's need to obtain medical treatment each Friday morning for blisters on his big toe on his right foot which failed to heal because of his diabetes.

18. In July 2015, Shipe informed Cox and Hanna that his physician was scheduling him for surgery on his toe due to diabetic complications with the healing of his toe and that he would need four to six weeks off from work to recover from the surgery.

19. Hanna instructed Shipe to request leave in writing to cover both his surgery and recovery.

20. On August 4, 2015, Shipe sent a short memo to Cox, Hanna and Dave Lingo, Kessinger's Director of Operations, requesting a "30 day leave of absence under Kessinger Hunter Management policy #601." See EEOC's Exhibit 1 attached.

21. EEOC's Exhibit 1 is a true and correct copy of Shipe's August 4, 2015 memo requesting medical leave.

22. Policy #601 (see EEOC's Exhibit 2 attached hereto) covered medical leaves "of absence to eligible employees with less than 1 year of employment service who are temporarily unable to work due to a serious health condition."

23. EEOC's Exhibit 2 is a true and correct copy of Kessinger's Policy #601 which was in effect during the time of Shipe's employment in 2015.

24. After Kessinger approved the requested thirty days leave from August 5 to September 4, 2015, Hanna informed Shipe he would ultimately need a medical release from his physician indicating he was able to return to work without any restrictions at the end of the leave period.

25. On August 5, 2015, Shipe underwent surgery and his big toe on his right foot was amputated due to diabetic complications.

4

26. On August 28, 2015, Shipe contacted Hanna to inform her that his follow-up appointment with his physician regarding his recovery from surgery was not scheduled until September 9, 2015.

27. Shipe asked Hanna for a five-day extension of his 30-day medical leave to return to work so he could meet with his doctor on September 9, 2015.

28. Hanna informed Shipe that Kessinger had granted his request for a five-day extension of his leave to September 10, 2015.

29. After his doctor's appointment on September 9, 2015, Shipe called Hanna let he know his physician recommended Shipe remain off work for an additional five days to better complete recovery.

30. On September 10, 2015, Lingo instructed Hanna to call Shipe and let him know his employment was terminated with Kessinger for failure to return to work from medical leave by that day.

31. On September 10, 2015, Hanna phoned Shipe and informed him of his termination for failing to obtain a medical release to full duty by the extension date (September 10, 2015).

32. The reason for Shipe's termination was stated on Shipe's Human Resources Personnel Action Form (see EEOC's Exhibit 3 attached hereto) indicting he was "unable to return from medical leave due to condition."

33. EEOC's Exhibit 3 is a true and correct copy of Kessinger's Human Resources Personnel Action Form for Richard Shipe, approved on September 1, 2015.

34. After being terminated by Hanna over the telephone, Shipe met with Cox, Lingo, and Hanna at Kessinger-Crown Center on September 10, 2015 to discuss the reasons why he could not continue working for Kessinger.

35. During this same meeting with Cox, Lingo and Hanna on September 10, 2015, Shipe provided them a medical release to return to duty without restrictions he had obtained from his treating physician, Dr. Jeffrey Harsch, that same day.

36. During this same meeting with Cox, Lingo and Hanna on September 10, 2015, Lingo informed Shipe that it was too late; he was already terminated and he would not bring him back. D

37. During this same meeting with Cox, Lingo and Hanna on September 10, 2015, Lingo further stated to Shipe that the medical release from Dr. Harsch was not acceptable because anyone can go out and get a doctor's release.

38. When Shipe asked why he was being terminated, Lingo stated that Shipe was too big a liability to them.

## COUNT I

### (ADA – Failure to Accommodate)

39. Paragraphs 1 through 38 are realleged and incorporated by reference as though fully set forth herein.

40. Kessinger engaged in unlawful employment practices in violation of Section 102 of the ADA, 42 U.S.C. § 12112(a) and (b), by failing to provide Shipe, a qualified individual with a disability, with a reasonable accommodation to his known physical limitations.

6

41. The effect of the practices complained of herein has been to deprive Shipe of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability.

42. As a direct result of Kessinger's actions, Shipe has suffered actual damages including but not limited to back pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

43. Kessinger's unlawful employment practices complained of herein were intentional.

44. Kessinger's unlawful employment practices complained of herein were done with malice or reckless indifference to Shipe's federally protected rights.

## COUNT II

### (ADA – Discharge)

45. Paragraphs 1 through 44 are realleged and incorporated by reference as though fully set forth herein.

46. Kessinger engaged in unlawful employment practices in violation of Section 102 of the ADA, 42 U.S.C. § 12112(a) and (b), by discharging Shipe, a qualified individual with a disability, because of his disability.

47. The effect of the practices complained of herein has been to deprive Shipe of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability.

48. As a direct result of Kessinger's actions, Shipe has suffered actual damages including but not limited to back pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

49. Kessinger's unlawful employment practices complained of herein were intentional.

7

50.     Kessinger's unlawful employment practices complained of herein were done with malice or reckless indifference to Washington's federally protected rights.

PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A.      Enter declaratory judgment pursuant to 28 U.S.C. § 2201(a) that Kessinger's maximum leave under Policy # 601 violates the ADA, 42 U.S.C. § 12112(a) and (b), by prohibiting Kessinger from engaging in the interactive process with qualified employees with disabilities who request a reasonable accommodation in the form an extended leave of absence;

B.      Enter declaratory judgment pursuant to 28 U.S.C. § 2201(a) that Kessinger unlawfully discriminated against Shipe by failing to make a reasonable accommodation in violation of the ADA, 42 U.S.C. § 12112(b)(5)(A)-(B);

C.      Enter declaratory judgment pursuant to 28 U.S.C. § 2201(a) that Kessinger unlawfully discriminated against Shipe by terminating him in violation of the ADA, 42 U.S.C. § 12112(b)(5)(A)-(B);

D.      Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in disability discrimination against employees, and engaging in any other employment practices that discriminate on the basis of disability;

E.      Order and permanently enjoin Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees and that eradicate the effects of its past and present unlawful employment practices;

F.     Order Defendant to make Shipe whole by providing appropriate backpay with prejudgment interest, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay to Shipe;

G.     Order Defendant to make Shipe whole by providing compensation for past and future pecuniary losses resulting from the unlawful practices described above, including job search expenses and other amounts;

H.     Order Defendant to make Shipe whole by providing compensation for non-pecuniary losses resulting from the unlawful employment practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation;

I.     Order Defendant to pay Shipe punitive damages for its malicious or recklessly indifferent conduct described above;

J.     Grant such further relief as the Court deems necessary and proper in the public interest; and

K.     Aware the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all claims set forth herein.

                                        Respectfully submitted,

                                        EQUAL EMPLOYMENT OPPORTUNITY
                                        COMMISSION

                                        JAMES L. LEE
                                        Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANDREA G. BARAN Mo. Bar 46520
Regional Attorney

C. FELIX MILLER Mo. Bar 28309
Supervisory Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
St. Louis District Office
1222 Spruce St., Room 8.1
St. Louis, MO 63103
andrea.baran@eeoc.gov
felix.miller@eeoc.gov
Tel. No. (314) 539-791

*Jeff A. Lee*
Jeff A. Lee
Senior Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Oklahoma City Area Office
215 Dean A. McGee, Rm 524
Oklahoma City, OK 73102
Phone: (405) 231-5829
Fax No. (405) 231-4140
Email: jeff.lee@eeoc.gov

and

Dayna F. Deck Mo. Bar # 39033
Senior Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Kansas City District Office
400 State Ave., Suite 905
Kansas City, KS 66101
913-551-5848(voice)
913-551-6957(fax)
Email: dayna.deck@eeoc.gov

10